UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| TERRY G. WATSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:17 CV 20 DDN |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the Commissioner of Social Security finding that plaintiff Terry G. Watson is not disabled and, thus, not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

### I. BACKGROUND

Plaintiff was born on October 24, 1969. (Tr. 1998). Plaintiff filed an application for DIB on October 28, 2015, alleging an onset date of July 28, 2012. (Tr. 1998). Plaintiff claims that he suffers from chronic adjustment disorder with mixed anxiety and depression; radiculopathy, right lower extremity; total left knee replacement; quadriceps tendon muscle tear residuals including atrophy; left lower extremity radiculopathy and sciatica; osteoarthritis of the right knee; muscle pain tendon tie up; bursitis of the right and left shoulders; degenerative disc disease; spondylosis with myelopathy; and sacroiliitis. (Tr. 2034-35). Plaintiff's application was denied on March 3, 2016, and he

requested a hearing before an administrative law judge ("ALJ"). (Tr. 2053, 2057). A hearing was held in October 2016, where plaintiff, a vocational expert ("VE"), and a witness testified. (Tr. 1987-2033). By decision dated November 4, 2016, the ALJ found that plaintiff was not disabled under the Social Security Act. (Tr. 38-57). The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform jobs available in significant numbers in the national economy. *Id.*

On March 8, 2017, the Appeals Council of the Social Security Administration denied plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner to be reviewed in this case. (Tr. 1-5). Plaintiff argues that the ALJ's decision is not supported by substantial evidence. (Doc. 18). He asks for judicial review of the ALJ's decision and for entry of whatever judgment may be proper, including costs. (Doc. 1). He also seeks nominal damages in the amount of $1.00 and an injunction that defendant not discriminate against veterans. (Doc. 18 at 8).

**A.     Medical Record and Evidentiary Hearing**

To be entitled to DIB, plaintiff has the burden to show disability after his alleged onset date but prior to the expiration of his insured status on December 31, 2017. (Tr. 2034). *See* 20 C.F.R. § 404.130; *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009). Although plaintiff has submitted decades of medical records, the only records relevant to the inquiry before this Court are those detailing plaintiff's impairments between July 28, 2012 and December 31, 2017.

To place plaintiff's impairments in context, however, some background information is useful: plaintiff served in the United States Army from 1988 to 1993. (Tr. 2001). In the early 1990s, he fell to the ground from a two-story Army building, and he has had long-term side effects related to the resulting injuries. (Tr. 26, 396, 1318, 1636). The Department of Veterans Affairs ("VA") considers plaintiff to be "totally and permanently disabled due solely to [his] service-connected disabilities." (Tr. 2100). In 2009, plaintiff had a total replacement of his left knee, and while recovering he slipped and fell, tearing his left quadriceps tendon and requiring additional surgery. (Tr. 2540).

Plaintiff was incarcerated in February 2012, and his treatment since his July 28, 2012 alleged onset date shows that he has a "steady gait" (Aug. 9, 2012, Tr. 2435; Jan. 16, 2013, Tr. 2457; Sep. 3, 2015, Tr. 3038; Dec. 16, 2015, Tr. 3103); "full range of motion" with some joint pain in his right knee and left leg (July 26, 2012, Tr. 2431); "good ability" to perform physical therapy exercises (Jun. 15, 2013, Tr. 2962); "no gross motor weakness" (Jul. 25, 2014, Tr. 2355); and the ability to sit, stand, and move all extremities without difficulty. (Aug. 7, 2012, Tr. 2435; Sep. 3-5, 2015, Tr. 3038-47; Dec. 3, 2015, Tr. 3094) A medical evaluation conducted in August 2013 revealed that plaintiff's knees were "stable w/o effusion or deformity." (Tr. 2305). In December 2015, his nurse noted he "ambulates appropriately" and is "able to move all extremities without difficulty." (Tr. 3094, 3303). A February 2016 exam of his knee replacement revealed "no indication of loosening, discontinuity or joint effusion." (Tr. 3324).

The medical records reveal plaintiff does use an assistive device to walk around. In September 2012, he requested and was issued a cane, and, because he could not carry a tray with his cane, was also given a helper at meals. (Tr. 2440-41). In June 2013 he reported he uses a straight cane with all walking and that his leg and back pain is worst with sustained standing or sitting in a non-cushioned chair. (Tr. 2961-62). In September 2015 he reported using a cane "for longer distances." (Tr. 3046, 3055, 3064).

In terms of plaintiff's back and neck pain, diagnostic imaging showed plaintiff has mild degenerative changes in his lumbosacral spine, with slight disc-space narrowing, some asymmetry, and bony sclerosis. (Tr. 2477-81, 3019). Imaging of plaintiff's neck also showed "minimal marginal" hypertrophic changes to the cervical spine. (Tr. 3324). Providers have described these degenerative changes as "mild," "minimal," "stable," and "slight," and plaintiff has reported significant improvement in his symptoms with treatment. (Tr. 2350, 2425, 2477-81, 2961, 3019, 3026, 3324).

With regard to plaintiff's mental health, plaintiff has denied having any mental symptoms or complaints on several occasions. (Tr. 3026, 3115-17). Providers have frequently noted plaintiff's normal affect and mood (Tr. 3026, 3042, 3054, 3068, 3086)

3

with only occasional observations of plaintiff acting "anxious" or, when he was placed in administrative segregation, "stressed." (Tr. 3034, 3116).

On October 26, 2011, Physician Assistant Deborah S. Droste opined that plaintiff could not perform farm work, has distractions from chronic pain, and has difficulty getting up and down from the seated position at a desk, but is otherwise able to perform desk work. (Tr. 2544).

On January 23, 2012, plaintiff was evaluated by Nurse Practitioner Susan Morris, who opined that plaintiff's lumbar and cervical spine issues "are severe and permanent," to the extent that he must make frequent changes of position for his neck and back when sitting at a desk or a computer. (Tr. 2297). She recommended that plaintiff "have an ergonomically correct chair," and "have frequent change of position sit to stand." (Tr. 2297).

On October 31, 2014, plaintiff was evaluated by a VA doctor, James Richard Marzolf, M.D., who rated plaintiff's left knee extension at 4/5 and noted muscle atrophy in his left thigh and calf, normal deep tendon reflexes, positive straight leg raising tests on both legs, diminished motor strength with left knee extension, diminished sensation in his left leg, and moderate pain in his left lower extremity. (Tr. 3366-78). Dr. Marzolf opined that due to plaintiff's back issues, he cannot sit more than 15 minutes, walk more than 300 feet, bend, stoop, lift, or carry more than 20 pounds. (Tr. 3370). Dr. Marzolf also opined that plaintiff would have "increased absenteeism 7 days per month." (Tr. 3370).

B.  **ALJ's Decision**

The ALJ first found that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017. (Tr. 43). He found that plaintiff has not engaged in substantial gainful activity since his alleged onset date of July 28, 2012. (Tr. 43). He also found that plaintiff suffers from the severe impairments of status/post left knee replacement; degenerative disc disease in the lumbosacral spine; degenerative joint disease in the right knee; and obesity. (Tr. 43). However, the ALJ concluded that none

4

of these impairments, individually or in combination, met or equaled an impairment listed in the Commissioner's regulations. (Tr. 47-48).

The ALJ determined that plaintiff's impairments left him with the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that he can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. (Tr. 48). In making this determination, the ALJ considered the objective medical evidence in the record, opinion evidence, and plaintiff's allegations and testimony. (Tr. 48-51).

The ALJ found that plaintiff's reports concerning the intensity, persistence, and limiting effects of his impairments were not consistent with the medical evidence and other evidence in the record. (Tr. 49). The ALJ noted that although plaintiff underwent a total replacement of his left knee in 2009, diagnostic imaging shows it to be stable, in good repair, without effusion or deformity, and having "good residual function." (Tr. 49). The ALJ noted that plaintiff generally demonstrates normal reflexes and strength throughout his left lower extremity and has been observed to have a steady gait and the ability to sit, stand, and move his extremities without difficulty. (Tr. 49). He reported significant improvement with physical therapy and met all of his defined treatment goals, and the ALJ observed that the knee replacement occurred three years prior to his alleged onset date. (Tr. 49).

The ALJ pointed to similar evidence contradicting plaintiff's complaints about his right knee. (Tr. 49). As to plaintiff's back pain, the ALJ observed that diagnostic imaging shows plaintiff has some degenerative changes in his lumbosacral spine and hypertrophic changes in his cervical spine. He has occasionally exhibited a limited range of motion through his lumbosacral spine, tenderness to palpation, muscle spasms, and positive straight-leg raises. (Tr. 49-50). However, the ALJ relied on the reports of providers, who described plaintiff's spinal conditions as "mild," "minimal," and "slight," and plaintiff's own reports that he had significant improvement in his pain with epidural steroid injections, the use of an inversion table, and medication. (Tr. 50).

As to plaintiff's obesity, the ALJ noted that plaintiff has a body mass index of 40.9 and was diagnosed with morbid obesity. (Tr. 50). The ALJ concluded that plaintiff's

obesity significantly limits his ability to engage in work activity and causes plaintiff to experience greater pain and functional limitations than might otherwise be expected from his impairments. (Tr. 50). The ALJ state he considered these combined effects in determining plaintiff's RFC. (Tr. 48).

The ALJ also observed that plaintiff often denied having any physical or mental symptoms or complaints at doctor appointments, and noted that his alleged date of onset coincides with the start of his incarceration. (Tr. 50).

With regard to the opinion evidence, the ALJ noted that the record contains a 100-percent disability determination by the VA. (Tr. 50). The ALJ noted that while he was mindful plaintiff was found disabled by the VA and is currently receiving disability payments from it, the VA's determination was not binding on him, as the Social Security Administration makes determinations of disability according to Social Security law. (Tr. 50). The ALJ nevertheless considered the VA determination and gave it little weight, finding it to be inconsistent with plaintiff's largely normal physical examinations and lack of subjective complaints to providers. (Tr. 50).

The ALJ gave the opinion of Deborah S. Droste, P.A., some weight. Ms. Droste found plaintiff able to perform desk work. The ALJ found this opinion to be generally consistent with the objective medical evidence, but discounted it because it did not contain a function-by-function analysis of plaintiff's remaining capabilities and because Ms. Droste is not an acceptable medical source under the regulations. (Tr. 50-51).

The ALJ gave the opinion of Dr. Marzolf little weight. Dr. Marzolf opined that plaintiff could not sit more than 15 minutes at a time, walk more than 300 feet, stand more than one hour at a time, lift and carry more than 20 pounds; bend, stoop, or squat; ascend and descend stairs without difficulty; or walk without a cane. (Tr. 51). Dr. Marzolf also believed plaintiff would likely be absent at least seven times a month as a result of his impairments. (Tr. 51). The ALJ found these restrictions to be inconsistent with plaintiff's largely normal physical examinations, his documented "mild" and "minimal" degenerative changes, and his own reports of little to no symptoms to providers (i.e. Dr. Marzolf opined plaintiff must always use a cane, but treatment notes

6

show plaintiff to routinely have a steady gait and to use a cane only for long distances). (Tr. 51). The ALJ also noted that Dr. Marzolf's opinion was rendered in conjunction with veterans' disability benefits, which apply different rules and regulations than those applicable in a Social Security disability proceeding. (Tr. 51).

Finally, the ALJ gave little weight to the opinion of Nurse Practitioner Morris, who found plaintiff to have "severe and permanent" spondylolisthesis of the lumbar spine and spondylosis of the cervical spine, which she opined would limit his ability to sit at a desk or computer without frequent changes in position and would require an ergonomically correct chair. (Tr. 51). The ALJ discounted this opinion because Ms. Morris is not an acceptable medical source, the opinion did not contain a function-by-function analysis of plaintiff's remaining capabilities, its restrictions contain vague terminology without specific time constraints, and it is largely inconsistent with plaintiff's generally normal physical examinations and provider findings that plaintiff's spinal changes are mild. (Tr. 51).

The ALJ concluded that plaintiff is able to perform past relevant work as a legal assistant as actually performed. (Tr. 51-52). Accordingly, the ALJ concluded that plaintiff was not disabled. (Tr. 22).

## II. DISCUSSION

Plaintiff argues that the ALJ failed to give proper weight to the VA disability determinations and erred in doing so without obtaining the full VA record. He further claims that the ALJ ignored his chronic adjustment disorder and was personally biased against him as an incarcerated and disabled veteran. (Doc. 18). This Court disagrees.

### A. General Legal Principles

In reviewing the denial of Social Security disability benefits, the Court's role is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). It is not to conduct de novo review.

(*See* Doc. 18 at 6-7). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).

To be entitled to disability benefits, a claimant must prove that he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in a death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 CFR § 404.1520(a)(4); *see also Pate-Fires*, 564 F.3d at 942 (describing the five-step process).

Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform his past relevant work (PRW). *Id.* § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

## B. The ALJ Appropriately Weighed the VA Evidence

Plaintiff claims that, because he is 100% permanently and totally disabled under the VA benefits regime, he should qualify for Social Security benefits as well. (Doc. 18 at 7). He claims the ALJ "failed to give proper weight to the VA rating determinations and did so without obtaining the full record," arguing the standard for VA disability benefits "exceeds SSA regulations." (Doc. 18 at 2). Plaintiff's brief details his medical complaints and VA disability benefits regulations and asserts that "[t]he process of determining the rating percentage assigned to a particular disability is virtually the same as SSA." (Doc. 18 at 3). However, this assertion is contrary to well-established law.

The final responsibility for determining whether a claimant is disabled is reserved to the Commissioner of Social Security, not another agency. *See* 42 U.S.C. § 405(a); 20 C.F.R. § 404.1527. The VA regulations to which plaintiff refers are the Department of Veterans Affairs' own interpretations of its enabling statutes. *See, e.g.,* 38 C.F.R. §§ 3.159, 3.350, 3.352. The Social Security regulations govern the present case and are the Social Security Administration's interpretations of its own enabling statutes. *See* 42 U.S.C. §§ 401 *et seq*.

Plaintiff relies on *Bird v. Comm'r of Social Sec. Admin.*, in which the United States Court of Appeals for the Fourth Circuit found that the ALJ should have considered a VA rating decision retrospectively, even when it was issued after the DIB claimant's date last insured. 699 F.3d 337, 340-41 (4th Cir. 2012). That court held that the purposes and evaluation methodologies of the SSA and the VA are "closely related," so "a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency" and "must" be given substantial weight. *Id.* at 343. However, that court also noted that an ALJ may give less weight to a VA disability rating "when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.*

This Court agrees that VA records and opinions are relevant to the SSA disability determination. However, they are not binding on the SSA. 20 C.F.R. § 404.1504 ("We

must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.")[1]; *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) ("The ALJ should consider the VA's finding of disability, but the ALJ is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits.") (quoted case citation omitted). In *Pelkey*, the Eighth Circuit held that an ALJ did not err in discounting a VA disability rating when he "fully considered the evidence underlying the VA's final conclusion." 433 F.3d at 579. *Cf. Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998) (remanding on the basis that the ALJ failed to consider a VA determination and holding that "findings of disability by other federal agencies, even though they are not binding on an ALJ, are entitled to some weight and must be considered in the ALJ's decision").

In this case, the ALJ fully considered the evidence plaintiff submitted to support his claim, including evidence from the VA. He acknowledged that plaintiff was awarded a 100% disability rating from the VA, but he determined that this decision was entitled to little weight because it was inconsistent with plaintiff's physical examinations and reported symptoms. (Tr. 50).

The VA gave plaintiff significant disability ratings for his left knee replacement and related lower extremity issues, lumbar degenerative disc disease, and adjustment disorder. (Tr. 212, 2012). But the ALJ considered evidence from the relevant time period, July 28, 2012, to December 31, 2017, showing that plaintiff has a "steady gait" (Aug. 9, 2012, Tr. 2435; Jan. 16, 2013, Tr. 2457; Sep. 3, 2015, Tr. 3038; Dec. 16, 2015, Tr. 3103); "full range of motion" with some joint pain in his right knee and left leg (July 26, 2012, Tr. 2431); "good ability" to perform physical therapy exercises (Jun. 15, 2013,

---

[1] The Commissioner of Social Security recently amended this regulation, providing that for claims filed after March 27, 2017, the agency "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. 404.1504. However, this Court applies the regulation in effect at the time plaintiff filed his claim.

Tr. 2962); "no gross motor weakness" (Jul. 25, 2014, Tr. 2355); and the ability to sit, stand, and move all extremities without difficulty. (Aug. 7, 2012, Tr. 2435; Sep. 3-5, 2015, Tr. 3038-47; Dec. 3, 2015, Tr. 3094)  A medical evaluation conducted in August 2013 revealed that plaintiff's knees were "stable w/o effusion or deformity." (Tr. 2305). In December 2015, his nurse noted he "ambulates appropriately" and is "able to move all extremities without difficulty." (Tr. 3094, 3303). A February 2016 exam of his knee replacement revealed "no indication of loosening, discontinuity or joint effusion." (Tr. 3324).

As for plaintiff's lumbar degenerative disc disease, plaintiff was observed to have a steady gait and the ability to sit and stand without difficulty. (Tr. 2435). In June 2014, he had a good range of motion in his back and negative straight-leg raises. (Tr. 2350). Diagnostic imaging showed plaintiff had only "mild" degenerative changes in his lumbosacral spine, with slight disc-space narrowing, some asymmetry, and bony sclerosis. (Tr. 2477-81, 3019). Imaging of plaintiff's neck also showed "minimal marginal" hypertrophic changes to the cervical spine. (Tr. 3324). Providers described these degenerative changes as "mild," "minimal," "stable," and "slight," and plaintiff has reported significant improvement in his symptoms with treatment. (Tr. 2350, 2425, 2477-81, 2961, 3019, 3026, 3324). Plaintiff's medical providers frequently described his physical condition as "stable." (Tr. 2345, 2379, 2466, 2918, 2955, 3019). Plaintiff himself often denied to his providers that he had any symptoms or complaints. (Tr. 50, 3006, 3055, 3013, 3026, 3050, 3076, 3104,3269, 3313, 3342).

Finally, with regard to plaintiff's mental status, the ALJ considered the medical record to be inconsistent with the VA rating of mental disorder at 70 percent. He noted plaintiff's normal mental-status examinations (Tr. 44-45), as well as an opinion from plaintiff's VA record that his mental impairment was only mild or transient. (Tr. 2551–52). Plaintiff denied having any mental symptoms or complaints on several occasions, and he scored a "0" on a depression screening. (Tr. 44, 2358–60, 2554, 2564, 3026, 3115-17, 3153). Providers frequently noted plaintiff's normal affect and mood (Tr. 3026, 3042, 3054, 3068, 3086) with only occasional observations of plaintiff acting "anxious"

or, when he was placed in administrative segregation, "stressed." (Tr. 3034, 3116). The ALJ reasoned that plaintiff would have displayed greater abnormalities during his physical and mental examinations if he had disabling mental limitations, but these abnormalities were simply not present in the record. *See, e.g., McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (complaints of disabling pain are inconsistent with repeated observations from treating and consultative physicians that a claimant was not in acute pain or distress).

Inconsistences between medical treatment records and an opinion provide an appropriate basis for the ALJ to discount the VA disability rating. *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016); *Tapley v. Colvin*, No. 4:15 CV 643 NAB, 2016 WL 728332, at *4 (E.D. Mo. Feb. 24, 2016) (ALJ properly gave only little weight to VA disability rating because it was not fully supported by the record). For the above reasons, there was substantial evidence to support the ALJ's conclusion that the VA rating of 100% was inconsistent with the medical record and entitled to little weight. The ALJ considered plaintiff's mental and physical examinations, diagnostic test results, and frequent denial of symptoms. He lawfully considered "all relevant evidence" from the relevant time period, including plaintiff's VA records and prison medical records, as well as VA treatment records beginning in 2011. *See Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007). The more than one thousand pages of medical records provided a sufficient basis for the ALJ to assess the VA's disability rating, regardless of whether the ALJ had plaintiff's entire VA file. Plaintiff has not pointed to any records in his VA file that would contradict the ALJ's analysis. Nor can the Court find any, as in the years immediately prior to his alleged onset date and incarceration, plaintiff was working full time and engaged in significant physical activities like heavy lifting. (Tr. 2117-19, 2134, 2139, 2163-64, 2246, 2254, 2265, 2283).

For these reasons, the Court finds that the ALJ properly considered the VA's disability ratings and did not err in giving the ratings little weight.

## C. The ALJ Adequately Developed the Record

Plaintiff similarly argues that the ALJ erred by not obtaining his complete VA file. The Court construes plaintiff's argument as a failure by the ALJ to develop the record. The Commissioner has a duty to fully and fairly develop the record. *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006). However, a plaintiff claiming that the Commissioner failed to do so must show both a failure to develop necessary evidence and unfairness or prejudice resulting from that failure. *See Haley v. Massanari*, 258 F.3d 742, 749–50 (8th Cir. 2001). As long as the record contained enough evidence to permit the ALJ to reach an informed decision, the record was complete. *See id.*; *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (holding that an ALJ is permitted to issue a decision without obtaining additional medical evidence if other evidence in the record provides a sufficient basis for the ALJ's decision).

As discussed above, and contrary to Plaintiff's theory, the ALJ had sufficient medical evidence from the relevant period to reach an informed decision. Moreover, plaintiff has not pointed to any evidence in the omitted records that would have changed the outcome of the ALJ's decision. *See Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (declining to remand when an ALJ's deficiency "has no practical effect on the outcome of the case."). Again, the record before the ALJ contained over one thousand pages of medical records. (Tr. 2241–3406). Those records included treatment notes from Corizon, which provided his medical care during the relevant period; from the VA; and from plaintiff's orthopedist. (Tr. 2241–3406). Plaintiff points to nothing in the remainder of the VA file that would contradict the records before the ALJ or undermine the ALJ's reasoning. Thus, Plaintiff has not shown that the ALJ's alleged failure to develop the record prejudiced him. The Court is persuaded that the voluminous evidence of record provided a sufficient basis for the ALJ's decision, and no further development was necessary.

### D. Substantial and Sufficient Evidence Supports the ALJ's RFC Determination

Finally, plaintiff claims that the ALJ ignored his chronic adjustment disorder and discriminated against plaintiff "due to his incarcerated status and because he is a disabled veteran." (Doc. 18 at 9). He argues that "the ALJ was biased against the VA ratings for personal belief, not for the evidence presented by Plaintiff." (Doc. 18 at 5). Plaintiff presented his claim of bias to the Appeals Council, which considered and denied plaintiff's claim. (Tr. 2, 2217). Plaintiff now renews the allegation before this Court.

ALJs and similar quasi-judicial administrative officers are presumed to be unbiased. *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) (holding that there is a "presumption of honesty and integrity in those serving as adjudicators."). In order to overcome this presumption, a plaintiff must show "that the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment." *Perkins v. Astrue*, 648 F.3d 892, 903 (8th Cir. 2011). This is a heavy burden to bear. In *Perkins*, the plaintiff presented evidence that the ALJ referred to the Lifetime Channel as the "girl channel" and stated that he "could have touched a feminist's nerve there with the girl thing," as well as statistical evidence showing that the ALJ in that case had lower than average approval ratings for obese women with fibromyalgia and mental impairments. *Id.* at 902–03. The Eighth Circuit held that this was insufficient to demonstrate bias, even if they were sarcastic. *Id.* at 903.

Plaintiff has produced far less in support of his allegation of bias. He points to no statement made by the ALJ nor statistical evidence about the ALJ's treatment of veteran claimants. On the contrary, upon the Court's review of the hearing transcript, the ALJ treated plaintiff courteously and respectfully in a nearly hour-long hearing, explaining in detail why a VA rating would not be binding on his decision (Tr. 1993-95), advising plaintiff of his right to representation (Tr. 1990-91), offering plaintiff the option to shift positions if necessary (Tr. 1997), apologizing to plaintiff for the long wait in receiving a decision (Tr. 2033), preparing plaintiff to ask questions of the vocational expert (Tr. 2026), and asking plaintiff if he had any more questions for the vocational expert. (Tr. 2031). While the ALJ did ask plaintiff questions about his incarceration, these were

14

related to his conviction date and expected release date. (Tr. 1999). Plaintiff's release date is relevant because disability benefits cannot be paid to an individual who is in jail, *see* 42 U.S.C. § 402(x)(1)(A), and plaintiff's conviction date is relevant because the ALJ was trying to determine whether plaintiff only stopped working because of his incarceration, as he stated in his application (Tr. 2154), rather than his impairments.

Accordingly, plaintiff has not shown that the ALJ's behavior was "so extreme as to display clear inability to render fair judgment." *Perkins*, 648 F.3d at 902-03.[2]

On the contrary, the ALJ treated plaintiff appropriately and objectively, and relied on substantial evidence in finding that plaintiff's chronic adjustment disorder was not severe. He noted plaintiff's normal mental-status examinations (Tr. 44-45), an opinion from plaintiff's VA record that his mental impairment was only mild or transient (Tr. 2551–52), plaintiff's frequent denials of having any mental symptoms or complaints on several occasions and scoring "0" on depression screenings (Tr. 44, 2358–60, 2554, 2564, 3026, 3115-17, 3153), and providers frequently noting plaintiff's normal affect and mood (Tr. 3026, 3042, 3054, 3068, 3086) with only occasional observations of plaintiff acting "anxious" or "stressed" (Tr. 3034, 3116). The ALJ did not ignore plaintiff's adjustment order but considered the evidence of record and lawfully found it to be non-severe.

---

[2] In his reply brief, plaintiff also invokes *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and the ADA. (Doc. 18 at 8). However, plaintiff did not plead those claims in his complaint (Doc. 1), nor can he bring a *Bivens* or ADA claim under 42 U.S.C. § 405(g). Regardless, plaintiff has not demonstrated a constitutional violation to support a *Bivens* claim nor has he demonstrated that the ALJ discriminated against him because of his purported disability or otherwise shown that he qualifies for protection under the ADA. *See Hart v. City of Little Rock,* 432 F.3d 801, 804 (8th Cir. 2006); *Chalfant v. Titan Distribution, Inc.*, 475 F.3d 982, 988 (8th Cir. 2007)

## III. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

                                     /S/   David D. Noce
                                 **UNITED STATES MAGISTRATE JUDGE**

Signed on September 18, 2018.